STATE EX REL. GLOBE ELEVATOR COMPANY, Appellant, vs.
PATTERSON, City Clerk, Respondent.

*December 14, 1907—January 8, 1908.*

*Interstate commerce: Property in transit: Taxation: Place of taxa-
tion: Grain in elevators.*

1. Where one buys property outside of the state and stores it within
   this state awaiting sale, such property cannot be held to be
   in transit during its stay in this state. It is a commodity kept
   for sale and not a commodity in transit, and is subject to taxa-
   tion in the proper taxing district of the state.
2. Under sec. 1040, Stats. (1898)—providing that personal property
   shall be assessed in the assessment district where the owner re-
   sides, except as otherwise provided; that if the owner be a
   nonresident or foreign corporation, but having an agent resid-
   ing in the state in charge of such property, then the same shall
   be assessed in the district where such agent resides, otherwise
   in the district where the same is located, except as otherwise
   provided, and that merchants' goods, wares, commodities kept
   for sale, tools and machinery, manufacturers' stock, farm im-
   plements, cord wood, live stock and farm products, *excepting
   grain in warehouse,* shall be assessed in the district where lo-
   cated,—grain owned by a foreign corporation, purchased out-
   side this state and stored in elevators in this state awaiting
   sale and shipment elsewhere, is subject to taxation in the as-
   sessment district where located, notwithstanding the fact that
   the owner had an agent in charge residing in another district.
[3. Whether such agent, who had no real possession or power of dis-
   position or sale of the grain, but was subject entirely to the
   orders of his superior who lived in another state, was an agent
   within the calls of sec. 1040, Stats. (1898), not determined.]
4. The words of sec. 1040, Stats. (1898), "excepting grain in ware-
   house," are *held* to constitute an exception to its immediate an-
   tecedent, "farm products," and not to the whole list of property
   beginning with "merchants' goods."

APPEAL from a judgment of the circuit court for Doug-
las county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an appeal from a judgment quashing a writ of
*certiorari* brought to reverse the action of the board of re-

view of the city of Superior in placing on the assessment roll for taxation in the year 1906 a large quantity of grain belonging to the relator and contained in certain elevators in said city operated by the relator. By the return to the writ it appeared that the testimony before the board of review showed the material facts to be as follows: The relator is a foreign corporation, whose officers all reside outside of the state, the secretary, who had chief management of the company's business, residing in Duluth. The relator owns the grain which it receives into its elevators and such grain comes from the Dakotas and Minnesota by rail. It ships to the East by lake such grain when sold, and during winter large quantities accumulate in the elevators to be loaded on boats and sent to purchasers in the East as rapidly as possible after navigation opens. One Fricke was the agent of the relator who had physical charge of the elevators and of the handling of the grain during 1906. He did not purchase or sell grain, but superintended its receipt from cars and its shipment by boat, receiving his orders from the secretary in Duluth. Fricke did not live in the city of Superior, but in the town of Nebagamon, in Douglas county. No question was raised as to the amount of the grain assessed or as to its ownership by the relator.

*C. H. Crownhart,* for the appellant.

For the respondent there was a brief by *T. L. McIntosh,* city attorney, and *L. K. Luse,* of counsel, and oral argument by *Mr. Luse.*

WINSLOW, C. J. The principal contention made by the relator in the trial court seems to have been that the grain in question was exempt from taxation because it was the subject of interstate commerce in transit from one outside state to another and temporarily within the state in the course of such transit. This contention, however, was abandoned by the relator in this court and with good reason.

When a person or corporation buys property outside of the state and stores it within the state awaiting sale, such property cannot logically be held to be in transit during its stay in the state, even though that stay be for a short time. When it reaches this state and is stored awaiting sale it is a commodity kept for sale and not a commodity in transit.

This brings us to the second contention made below and which was strongly urged in this court, namely, that under the provisions of sec. 1040, Stats. (1898), the grain must be assessed in the town of Nebagamon. That section, so far as material to the questions raised, reads as follows:

"All personal property shall be assessed in the assessment district where the owner resides, except as otherwise provided. If such owners be non-residents of the state or foreign associations or corporations, but having an agent residing in this state in charge of such property, then the same shall be assessed in the district where such agent resides; otherwise in the district where the same is located, except as otherwise provided. Merchants' goods, wares, commodities kept for sale, tools and machinery, manufacturers' stock, farm implements, cord wood, live stock and farm products, *excepting grain in warehouse,* shall be assessed in the district where located."

The claim of the relator is that, as it is a foreign corporation and has an agent in charge of its property residing in the town of Nebagamon, such property, if taxed at all, must be taxed in that town under the second sentence of the section quoted. On the other hand, the argument is that Fricke is not such an agent as is contemplated by the section, because he had no real possession or power of disposition or sale of the property, but was subject entirely to the orders of his superior officer, who lived in another state. We do not find it necessary to decide this question nor do we intimate any opinion thereon. Conceding that Fricke was an agent having charge of the property within the meaning of the statute, the question of the situs of the property for

purposes of taxation is by no means settled. The first two sentences of the section are merely general provisions expressly made subject to more specific provisions elsewhere contained in the statute. One of these specific provisions referring to special classes of personal property immediately follows and forms the third sentence quoted above. If the property in question is covered by this specific and particular provision, such provision must, of course, govern, notwithstanding the preliminary general provision. That it is so covered cannot be doubted, because it is clearly a "commodity kept for sale." Hence it must be assessed in the district where located, unless it be included within the clause *"excepting grain in warehouse."* Whether it is included in that clause depends upon the question whether it is an exception to the single class of "farm products," or an exception to the whole list of property beginning with "merchants' goods." As a matter of construction, an exception naturally is to be referred to its immediate antecedent. It may, of course, refer to a number of antecedents if such appears to be the intention. In the present case the exception cannot refer to tools and machinery, farm implements, or live stock. Hence, in order to hold that it refers to anything beside farm products, we must hold that it attaches itself to its immediate antecedent and then skips over a number of others and finally re-attaches itself to a more remote one, i. e. "commodities kept for sale." This can hardly be called natural or logical. Doubtless the legislature had in mind the fact that farmers frequently store their surplus grain in railroad warehouses awaiting a favorable market, and deemed it best to make a separate class of grain so stored, assessing it to the owner at his residence along with the farmer's live stock and other products which are ordinarily located at his residence.

If, as we think, this be the correct view to be taken of the meaning of the exception, then the grain in question, being

a commodity kept for sale, was properly assessed in the district where it was located, and the writ was properly quashed.

*By the Court.*—Judgment affirmed.